OPINION OF THE COURT
Andrew V. Siracuse, J.
On May 9,1979 defendant Joanne E. Buckner executed a note and mortgage to plaintiff, Mary Ceravolo, in the amount of $30,000 payable at 8% interest per annum over a five-year term. The mortgage and note provided, among other things, that “this mortgage shall be all due and payable upon transfer of part of [sic] all of the subject premises, and shall not be assumable without the prior written consent of the mortgagee.”
On April 1, 1981 Buckner executed an agreement, commonly known as a land contract, with defendants Terry R. Keller and Jerald C. Lippincott seeking to convey the mortgaged premises. Ceravolo did not consent to this transaction. The agreement, which was recorded in the office of the Ontario County Clerk, provided for a down payment of $15,000 with the balance of $50,000 payable at *677 10% interest per annum over an eight-year term. Per the agreement, Keller and Lippincott are to receive the deed to the premises upon satisfaction of Ceravolo’s first mortgage.
Ceravolo, by this foreclosure action, seeks to enforce the “acceleration” or “due on” clause which is recited above. The matter is before the court on Ceravolo’s motion for summary judgment. Defendants Keller and Lippincott have cross-moved for dismissal of the complaint for failure to state a cause of action. Defendant Buckner submitted a conclusory affidavit that the agreement is not a “transfer” sufficient to violate the terms of the mortgage.
Two questions are presented on these motions. First, is this acceleration clause valid and enforceable, or is it unenforceable as an unlawful restraint on alienation? Second, assuming that the acceleration clause is valid, has Buckner violated the clause by her contractual relationship with Keller and Lippincott?
It has generally been the law in New York State that contractual provisions in a mortgage providing for “due-on-sale” are valid and enforceable and do not constitute an unlawful restraint on alienation. (First Fed. Sav. & Loan Assn. of Rochester v Jenkins, 109 Misc 2d 715; Mutual Real Estate Inv. Trust v Buffalo Sav. Bank, 90 Misc 2d 675; Stith v Hudson City Sav. Inst., 63 Misc 2d 863.) Under unusual circumstances, however, some New York courts have declined to enforce the due-on-sale clause. (See, e.g., Silver v Rochester Sav. Bank, 73 AD2d 81; Nichols v Evans, 92 Misc 2d 938.) These cases illustrate that the court’s inherent power to do equity in a foreclosure action may be applied to reach a result contrary to the general rule. Thus, each case must be decided on its own particular facts and, most importantly, upon the specific contractual language.
Some courts have held that a due-on clause can be enforced only if the mortgage has a proper motive, such as avoiding impairment of its security, for seeking enforcement. (Nichols v Evans, supra; Tucker v Lassen Sav. & Loan Assn., 12 Cal 3d 629.) This court declines to follow that limited view of the enforceability of a due-on clause and holds that the institution of a foreclosure action under a due-on clause in order to maintain the mortgage funds at current interest rates is also a proper motive.
*678 A consideration of the equities of this situation supports this conclusion. The determination of the enforceability of the due-on clause is, essentially, an evaluation of who will reap the profit and. benefit.
If the due-on clause is not enforced Buckner will gain as the property’s value will be enhanced by the favorable mortgage terms which she can offer. On the other hand, enforcement of the due-on clause would allow Ceravolo to profit by investing the principal at the current, higher interest rates. Further, the mortgage does not contain a prepayment clause and Buckner could benefit by refinancing elsewhere at a lower rate if the interest rates drop. Conversely, the due-on clause would allow Ceravolo to take advantage of changed market conditions and get the benefit of an interest rate increase.
In determining who should reap the benefit, the contractual rights of the mortgagee should be no less entitled to the recognition and protection of the court than those of the mortgagor. This seems especially appropriate in the instant case as the mortgaged premises is a business establishment. By enforcement of the acceleration clause, Ceravolo seeks to protect herself from inflationary market conditions. It has been noted that mortgage lenders must, have devices such as due-on clauses available to them in order to protect themselves in an economy of accelerating inflation and increased interest rates. (First Fed. Sav. & Loan Assn. of Rochester v Jenkins, supra, at pp 726-728.) Accordingly, seeking enforcement of a due-on clause in order to accommodate market conditions is a legitimate and reasonable business practice and is not an unlawful or improper motive.
The court is aware that the cases enforcing a due-on-sale clause have generally involved institutional lenders and long-term mortgages. (E.g., First Fed. Sav. & Loan Assn. of Rochester v Jenkins, supra; Mutual Real Estate Inv. Trust v Buffalo Sav. Bank, supra; Stith v Hudson City Sav. Inst., supra.) Thus, the present case is potentially distinguishable as the mortgagee herein is an individual and the mortgage is of only five years’ duration. After careful consideration, it is the court’s opinion that these distinguishable factors do not warrant a different result. An *679 individual lender should have the same amount of control over his capital as is afforded to an institutional lender. Further, under the prevailing market conditions having one’s assets committed for even a five-year period can be financially detrimental. On a practical level, allowing lenders to have some control over their funds through enforcement of the due-on clause should benefit the mortgage market. Such devices would encourage potential investors to place their funds in the mortgage market by giving them the opportunity to adjust to changed market conditions. While adjustable or variable rate mortgages are perhaps better methods of achieving this result, the due-on clause is a legitimate device. (See First Fed. Sav. & Loan Assn. of Rochester v Jenkins, supra, at p 726.)
In reaching this conclusion, the California case of Tucker v Lassen Sav. & Loan Assn. (12 Cal 3d 629, supra) which is a significant case in this area, has been considered. The court has chosen not to follow that case for the reasons stated above and because the decision’s result flows from a specific statute forbidding unreasonable restraints on alienation. (Cal Civ Code, § 711.) New York does not have a comparable statute nor does the case law, as briefly outlined above, prohibit this “restraint” as unreasonable.
Having found that the acceleration clause in issue is both valid and properly enforceable, it must now be determined whether the agreement between Buckner and Keller and Lippincott was a “transfer of all or part” of the mortgaged premises. The agreement has, in effect, shifted equitable title to the property to Keller and Lippincott, even though legal title still rests in Buckner. (Elterman v Hyman, 192 NY 113; Williams v Haddock, 145 NY 144; Sloan v Pinafore Homes, 38 AD2d 718; Occidental Realty Co. v Palmer, 117 App Div 505, affd 192 NY 588; Marine Midland Bank-N. Y. v Batson, 70 Misc 2d 8; Van Curler Dev. Corp. v City of Schenectady, 59 Misc 2d 621; Charles v Scheibel, 128 Misc 275, affd 221 App Div 816.) Since New York law is firmly settled and established that a contract for the sale of property operates as an equitable conversion, the purchaser, in contemplation of equity, becomes the real owner. (See 6 Warren’s Weed, New York Real Property, Vendee and Vendor, § 6.01, p 53; 62 NY Jur, Vendor and *680 Purchaser, § 28, p 236; Cicci v Humphreys, 33 Misc 2d 94; see, also, Holden v Efficient Craftsman Corp., 234 NY 437.) The factual situation present herein upholds this conclusion. Under the agreement, Keller and Lippincott are required to maintain insurance on the premises. Further, they are in possession and control of the premises and are responsible for payment of all utility expenses, real estate taxes, and repairs and maintenance, whether routine or structural. Accordingly, Keller and Lippincott are recognized, in equity, to be the real owners of the property.
The transfer of equitable ownership is a transfer of an interest in the property. While the mortgage language “transfer of an interest” might have been better language to have included to cover the within situation, the mortgage language “transfer of all or part of the premises” is sufficiently clear and encompasses such a transfer. Certainly, an equitable interest in the property which amounts to real ownership is a transfer of at least part of the premises as contemplated by the parties. On a practical level, it would be an exaltation of form over substance to allow enforcement of an acceleration clause on a consummated sale (e.g., First Fed. Sav. & Loan Assn. of Rochester v Jenkins, 109 Misc 2d 715, supra), but not to allow such enforcement in the instant situation wherein all benefits and incidents of ownership, except legal title, have been transferred. Indeed, the land contract is a recorded document and serves the same purpose as a deed — to put the public on notice of parties with an interest in the property. Accordingly, a transfer of the mortgaged premises within the contemplation of the parties and of sufficient quality to bring the agreement within the acceleration clause has occurred.
This result, while of first impression in New York State, is not without precedent in other jurisdictions. (See, e.g., Century Fed. Sav. & Loan Assn. of Bridgeton v Van Glahn, 144 NJ Super 48 [transfer of equitable title alone is a “change of ownership” sufficient to invoke an acceleration clause]; Tucker v Lassen Sav. & Loan Assn., 12 Cal 3d 629, supra [installment contract transaction is clearly covered by the terms of the due-on clause]; Mutual Fed. Sav. & Loan Assn. v Wisconsin Wire Works, 58 Wis 2d 99 [transfer *681 of title to mortgaged property, whether transfer is legal or equitable, is a conveyance sufficient to trigger due-on-sale clause].)
Accordingly, plaintiff’s motion for summary judgment is granted and defendants’ cross motion for dismissal of the complaint is denied.